**WO**                                                                                                          SVK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Rebecca Holka, et al.,               )   No. CV 07-1729-PHX-MHM (MEA)
      Plaintiffs,               )
                                         )   **ORDER**
vs.                                          )
                                         )
Janet Napolitano, et al.,            )
      Defendants.              )
_____)

Plaintiffs Rebecca Holka, Kristoffer Seneca, Michael Huntoo, Sean Belnap, Justin Dixon, Dennis Rumsey, David Van Orden, Donald Wooters III, Anthony Rodriguez, (Plaintiffs),[1] who are in the custody of the Arizona Department of Corrections (ADC), filed this civil rights action against Janet Napolitano, then-Governor of Arizona, and Terry Goddard, Attorney General of Arizona. (Doc. #1.) Defendants move to dismiss on the grounds that Plaintiffs did not exhaust prison administrative remedies before filing this lawsuit and they did not file a Notice of Claim. (Doc. #19.) The motion is ready for ruling. (Doc. ##22, 23.)

The Court will grant the motion and terminate the case.

---

[1] Plaintiffs are represented by counsel.

**I.     Background**

In their Complaint, Plaintiffs seek declaratory and injunctive relief regarding Arizona HB 2298, now A.R.S. § 31-254(d)(3). (Doc. #1.)  The statute, which was not yet in effect at the time the suit was commenced, requires ADC to deduct five percent of most inmates' wages to fund drug-transition services:

> D. If the compensation due a prisoner is less than two dollars per hour, mandatory deductions shall be taken for the following purposes in the order specified:
>
> 3. If the prisoner was not convicted of a violation of title 28, chapter 4, five percent of the prisoner's wages shall be used exclusively to fund the transition offices established by section 31-283. All monies collected under this paragraph shall be deposited, pursuant to sections 35-146 and 35-147, in the transition office fund established by section 31-284.

A.R.S. § 31-254(d)(3).

Plaintiffs assert their claims on behalf of a class of like-situated inmates who will not benefit directly from the services funded through the deductions because the inmates are not and have never served sentences for drug offenses.

In Count I, Plaintiffs alleged that the statute's mandatory deductions violate federal due process because the deductions do not provide for either a pre- or post-deprivation remedy under state law. In Count II, they alleged that the deductions amount to a violation of the federal takings clause. In Counts III and IV, Plaintiffs also claimed that the Defendants' implementation and enforcement of the statute violate the Arizona Constitution's due process and takings clauses, respectively. (Doc. #1.)

For relief, the Plaintiffs asked the Court to declare that the deductions required by the statute violate the federal and state due process and takings clauses. They further requested that the Court permanently enjoin Defendants from enforcing the statute against them and like-situated ADC inmates. Lastly, they asked the Court to award expenses, costs, fees, disbursements, attorney's fees, and "any other and further relief to which the Plaintiffs are legally entitled."

The Court ordered service on both Defendants. (Doc. #4.)

- 2 -

**II.    Motion to Dismiss for Failure to Exhaust**

    **A.    Legal Standard**

Plaintiff must first exhaust "available" administrative remedies before bringing this action. See 42 U.S.C. § 1997e(a); Vaden v. Summerhill, 449 F.3d 1047, 1050 (9th Cir. 2006); Brown v. Valoff, 422 F.3d 926, 934-35 (9th Cir. 2005). He must complete the administrative review process in accordance with the applicable rules. See Woodford v. Ngo, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, Porter v. Nussle, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, Booth v. Churner, 532 U.S. 731, 741 (2001).

Exhaustion is an affirmative defense. Jones v. Bock, 549 U.S. 199, 212 (2007). Defendants bear the burden of raising and proving the absence of exhaustion. Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). Because exhaustion is a matter of abatement in an unenumerated Rule 12(b) motion, a court may look beyond the pleadings to decide disputed issues of fact. Id. at 1119-20. Further, courts have broad discretion as to the method to be used in resolving the factual dispute. Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 369 (9th Cir. 1988) (citation omitted).

    **B.    Parties' Contentions**

        **1.    Defendants**

Defendants assert that Plaintiffs did not properly exhaust their administrative remedies. In support of their motion (Doc. #19), Defendants submit Plaintiffs' Initial Disclosure Statement (id., Ex. A); the affidavits of Aurora Aguilar (id., Ex. B-1 through B-9, Aguilar Aff.); the affidavit of Maureen Riordan-Agahi (id., Ex. C, Riordan-Agahi Aff.); ADC Department Order (DO) 802, Inmate Grievance System—the procedures for the standard inmate administrative grievance process (id., Ex. D); and HB 2583, An Act Amending Sections 31-254 and 31-284 (id. Ex. E).

Defendants assert that at the times relevant to Plaintiff's Complaint, the ADC's administrative remedies procedure was governed by ADC Department Order ("DO") 802. (Id. at 3.) It provides that an inmate may use the grievance process for issues relating to

- 3 -

"*property*, staff, visitation, mail, food service, *institutional procedures*, *Department Written Instructions*, program access, medical care, religion and *conditions of confinement*." (Id. at 3 (emphasis in Defendants' motion); Ex. C, DO 802.01 § 1.1.1.) A copy of DO 802 is maintained in each prison unit's library. (Id., DO 802.04 § 1.1.)

The DO provides a four-step standard-grievance process, which is generally as follows: (1) an inmate must submit an inmate letter to his assigned C.O. III, attempting to informally resolve a complaint within 10 days after becoming aware of a problem; (2) if the inmate is not satisfied with the response, he may file a formal grievance to the Grievance Coordinator within 10 calendar days of receipt of the response to the inmate letter; (3) if the inmate is not satisfied with that response, he may file a grievance appeal to a higher official—the Deputy Warden or Warden—within 10 calendar days of the receipt of the Coordinator's response; and (4) if the inmate is not satisfied with the response to his grievance appeal, he may appeal to the ADC Director within 10 calendar days of receipt of the response from the Warden or Deputy Warden. The Director has 30 days from receipt to respond to an appeal. (Id.) DO 802.07 § 1.2.4 provides that expiration of the time limit at any level of the grievance process entitles the inmate to proceed to the next level of review. (Id.)   Defendants assert that none of the Plaintiffs properly completed grievances all the way through to a final Director's appeal. (Doc. #19 at 5; Aguilar Affs.)   Defendants assert that they anticipate that Plaintiffs will argue that DO 802 was not available to them because they did not sue the Director of ADC but the Governor and Attorney General. They argue that nothing in the PLRA suggests that an inmate need not comply with the exhaustion requirement if he is suing state officials other than prison officials, especially where the issue is clearly within the scope of the prison grievance process. And they assert that the ADC Director is "responsible for the overall operations and policies of the department" and to "[m]aintain and administer all institutions and programs within the department," A.R.S. § 41-1604(A)(1) and (2), and would want to be made aware of valid concerns about the constitutionality of a statute that she is charged with enforcing "to enable her to take appropriate action." (Doc. #19 at 6.) Defendants assert that such actions

>could include, for example, seeking to amend the Statute or taking steps to determine the constitutionality of the Statute, in whole or in part. *See, e.g.,* House Bill 2583 (which proposed various amendments to the Statute and, though it was not ultimately passed, was the product of efforts by various state agencies including the ADC), annexed as Exhibit E.

(Id.)

Defendants also assert that according to their records, they were never served with notices of claim by any of the Plaintiffs. (Riordan-Agahi Aff. ¶¶ 4-5.) They argue that because Plaintiffs failed to file the required notice of claim, their claims brought under Arizona state law must be dismissed. Defendants contend that they anticipate that Plaintiffs will argue they did not need to file a notice of claim because their suit is for a declaratory judgment and does not seek an award of damages. See Martineau v. Maricopa County, 207 Ariz. 332, 335-37, 86 P.3d 912, 915-17 (2004). Defendants argue that although the Complaint is not clear as to whether Plaintiffs seek money damages in addition to a declaration that the statute is unconstitutional and an injunction against its enforcement, their Initial Disclosure Statement, in which they state "Plaintiffs are in the process of determining the approximate total amount of damages," confirms that they are seeking damages in addition to injunctive and declaratory relief. (Doc. #19 at 7; Ex. at 8.)

### 2. **Plaintiffs**

In their response, Plaintiffs concede that they did not file administrative grievances pursuant to the ADC grievance procedure, but they argue that they are not required to do so. (Doc. #22 at 2.) Specifically, they "challenge the notion that they must exhaust an administrative remedy that is irrelevant to the issues of redress." (Id. at 3.) Plaintiffs argue that the ADC grievance procedure is irrelevant to the issues of redress because their complaint is one for a declaratory judgment and injunctive relief regarding the constitutionality of a statute enacted by the Arizona Legislature. (Id.) Plaintiffs contend that rather than challenging Department Written Instructions or Department Orders, they rely on such Instructions and Orders because they create an enforceable right to receipt of earned wages for every hour actually worked. They argue that no prison policy has harmed them; rather it is the statute which is the source of the harm. (Id.)

- 5 -

1  Plaintiffs further argue that they are entitled to a declaratory judgment regarding the
2  rights and duties of the parties under the statute, regardless of whether the statute has been
3  implemented or enforced by prison policy or procedure. (Id. at 4.)  They assert that only
4  when discretion can be exercised is implementation and enforcement in the prison "pertinent
5  or essential." (Id.)  In addition, the PLRA requires exhaustion of "such remedies as are
6  available, " and Plaintiffs argue that nothing in Defendants' Motion states or suggests that
7  an internal grievance committee has the authority to grant any relief with respect to a
8  mandatory provision of a duly enacted state statute.

9  Plaintiffs also argue that the purposes of exhaustion identified and discussed in
10 Woodford, would not be served by requiring compliance with an irrelevant or non-existent
11 administrative remedy.  They note that the Ninth Circuit has distinguished, in the context of
12 the Individuals with Disabilities Education Act (IDEA), between cases in which there is an
13 imperfect fit between the relief sought and the remedy available and cases in which there was
14 no genuine connection between the relief and the remedy.  Robb v. Bethel School Dist. #403,
15 308 F.3d 1047, 1051-52 (9th Cir. 2002).  Plaintiffs argue that neither the source nor nature
16 of the invalidity or constitutional violation was imposed by a prison policy but were instead
17 found in the unconstitutional statute enacted by a different branch of government.  They
18 assert that relief is within the purview of the judicial branch. (Doc. #22 at 6-7.)

19  **3.  Reply**

20  In their reply, Defendants note that Plaintiffs do not address Defendants' Notice of
21 Claim arguments; Defendants assert that Plaintiffs have essentially conceded that they are
22 not seeking money damages because filing a Notice of Claim is a condition precedent to
23 seeking an award of money damages under Arizona law and Plaintiffs have not demonstrated
24 that they filed any Notice. (Doc. #23 at 1.)  Defendants argue that Plaintiffs do not explicitly
25 claim that they are seeking money damages on their § 1983 claims, stating that they are
26 seeking "declaratory and injunctive" relief but also contending that they have "an enforceable
27 right to actual [sic] receipt or earned wages for every hour actually worked." (Id. at 2.)
28

1  Defendants ask that the Court enter an Order that Plaintiffs are foreclosed from seeking
2  damages or any monetary relief in this action.  (Id.)

3        Defendants also argue that it is not for the courts to examine the effectiveness of
4  administrative remedies but rather to focus on whether an administrative remedy process is
5  available in the prison. Booth, 532 U.S. at 739-41.  They assert that previously recognized
6  exceptions to the exhaustion requirement, such as futility, no longer apply. Id. at 741 n.6.
7  They assert that regardless of the relief sought, the inmate must exhaust all administrative
8  relief available, and the exhaustion requirement applies to all prison issues. Porter, 534 U.S.
9  at 532.

10        Defendants contend that Plaintiffs' claim that they take issue with an Arizona statute,
11  not an ADC policy, fails because the Director has absolute discretion to decide whether to
12  allow inmates to work, A.R.S. § 31-251(A), and therefore, has the "authority not to make
13  them work." (Doc. #23 at 3.)  Without implementation of the statute, Plaintiffs would have
14  no standing.  (Id.)

15        Defendants further argue that whether the grievance process provides an
16  administrative remedy to challenge the constitutionality of the statute is not the test for
17  whether the ADC procedure was available for purposes of exhaustion.  (Id.) "The obligation
18  to exhaust 'available' remedies persists as long as some remedy remains 'available.'  Once
19  that is no longer the case, then there are no longer any 'remedies . . . available,' and the
20  prisoner need not further pursue the grievance." Brown, 422 F.3d at 935.  Defendants
21  reassert that they could take steps to lobby the legislature to amend the statute or determine
22  for themselves whether the statute passes constitutional muster.  The Director could also
23  discontinue work entirely or change the graduated schedule to compensate prisoners for their
24  work pursuant to § 31-254(A).  (Doc. #23 at 4.)

25        Defendants also raise a new argument in their reply.  Specifically, they assert that
26  Plaintiffs undermine their claims by attempting to make their claims about the Governor's
27  signing the statute and the Attorney General's general obligation to enforce it.  They argue
28  that although the Eleventh Amendment does not bar actions seeking only declaratory and

1  injunctive relief against state officials in their official capacities, "there must be a connection
2  between the official sued and enforcement of the allegedly unconstitutional statute, and there
3  must be a threat of enforcement." Long v. Van de Kamp, 961 F.2d 151, 152 (9th Cir. 1992).
4  This "connection must be fairly direct; a generalized duty to enforce the challenged provision
5  will not subject an official to suit." Planned Parenthood of Idaho, Inc. v. Wadsen, 379 F.3d
6  908, 919 (9th Cir. 2004).

    **C.**    **Analysis**

         **1.**    **Exhaustion**

The Court will grant the motion because Defendants have met their burden to demonstrate that Plaintiff failed to exhaust administrative remedies.

The burden is on Defendants to show that there is an administrative review process and that Plaintiffs failed to exhaust their claims under that process.  Plaintiffs concede that they did not exhaust the ADC administrative procedures but argue that they were not required to do so in this case. The Court disagrees.

In Booth, 532 U.S. at 741, the Supreme Court held that the PLRA requires exhaustion, regardless of the relief offered through the administrative procedures, and in Porter, 534 U.S. at 532, the Court held that the "PLRA's exhaustion requirement applies to *all inmate suits about prison life . . . .*" (Emphasis added.)  In Booth, the Court specifically rejected the inmate's argument that because he sought money damages and no such relief was available through the administrative process, he need not exhaust remedies. The Court reasoned that one exhausts processes, not forms of relief. 532 U.S. at 739. The Court also acknowledged that some redress for a wrong is presupposed by the PLRA's requirement of an "available" remedy. Id. at 736.

Here, Defendants establish that ADC provides a grievance procedure and that the procedure can be used for issues relating to "property, staff, visitation, mail, food service, institutional procedures, Department Written Instructions, program access, medical care, religion and conditions of confinement." The only language in the grievance procedure that limits the issues that may be addressed by the procedure is that "[i]nmates may not use the

1  inmate grievance system for classification, discipline issues, or any other system which has
2  its own unique appeal process." (Doc. #19, Ex. D 802.01 § 1.2.3.)  Plaintiffs point to no
3  language making the procedure unavailable here. The Court finds that Plaintiffs' claims for
4  deducted wages could have been pursued as property claims. Indeed, Plaintiffs do not argue
5  that the grievance procedure was not available to them.

6  Plaintiffs argue that there was no remedy available to them under the ADC grievance
7  procedure. The Ninth Circuit considered the issue of "available" remedies in <u>Brown</u>, 422
8  F.3d 926, where two prisoners had used the California Department of Corrections grievance
9  process by filing appeals but did not pursue their appeals to the final level after receiving
10 responses at the intermediate level. The court noted that the purpose of the PLRA exhaustion
11 requirement is to afford prison officials "time and opportunity to address complaints
12 internally before allowing the initiation of a federal case." <u>Id.</u> at 936 (citing <u>Porter</u>, 534 U.S.
13 at 525). Thus, the court held that a prisoner need not continue to exhaust additional levels
14 of review if he has either received all "available" remedies at an intermediate level of review
15 or been that no remedies are available. <u>Brown</u>, 422 F.3d at 935. A defendant must prove the
16 availability of a remedy; relevant evidence of an available remedy includes regulations or
17 official directives describing the scope of the administrative review process, documentary
18 or testimonial evidence from relevant prison officials, and information provided to the
19 prisoner. <u>See id.</u> at 937. To determine whether remedies were available, the court examines
20 prison officials' responses to the inmate grievances and the actual grievance procedures. <u>See</u>
21 <u>id.</u> at 937-43.

22 The Court finds that Plaintiffs' case differs from <u>Brown</u> because Plaintiffs never
23 attempted to use the ADC grievance process. They merely assumed the unavailability of *any*
24 remedy and failed to file grievances. While it is clear that the grievance process could not
25 provide the result sought in the Complaint,[2] that is not the test. <u>See Booth</u>, 532 U.S. at 741.

---

[2] Defendants suggest that one remedy would have been to eliminate work programs, which they assert, and Plaintiffs do not dispute, is within the authority of prison officials. (Doc. #23 at 3.)

- 9 -

1 The court in Brown held that "a prisoner need not press on to exhaust further levels of review
2 once he has either received all 'available' remedies at an intermediate level of review or been
3 reliably informed by an administrator that no remedies are available."  The Court believes
4 that this language requires that inmates at least begin the grievance process in order to
5 determine whether *any* remedies are available; to hold otherwise would undermine the
6 holding in Porter that exhaustion is required for all inmate suits about prison life and would
7 unnecessarily involve the courts in determining whether remedies were available even before
8 prison officials so determined.  See also Alexander v. Hawk, 159 F. 3d 1321, 1327-28 (11th
9 Cir. 1998) (requiring exhaustion of administrative remedies where prisoner challenged the
10 constitutionality and BOP implementation of a statute).

11 Moreover, the Court disagrees with Plaintiffs' contention that exhaustion here would
12 not serve the purposes behind the exhaustion requirement.  In Porter, 534 U.S. at 525, the
13 Supreme Court noted that requiring exhaustion promotes the goals of the PLRA because,
14 among other things, it improves the quality of suits that are filed because it often results in
15 creation of an administrative record that "clarifies the contours of the controversy."  For
16 example, exhaustion here could have clarified the number of inmates actually affected by
17 implementation of the statute or even the costs to ADC of administering the program.

18 Finally, Plaintiffs' reliance on Robb, 308 F.3d 1047, is misplaced.  In Robb, the Ninth
19 Circuit affirmed the district court's dismissal of the plaintiffs' suit under the IDEA, holding
20 that plaintiffs were required to exhaust administrative remedies.  The court distinguished the
21 Robbs' situation from that in Witte v. Clark County School Dist., 197 F.3d 1271 (9th Cir.
22 1999).  In Witte, the court held that exhaustion under the IDEA was not required where the
23 parents sought only money damages, not available under the IDEA, for physical abuse to
24 their son resulting from his disability and where they had already received the educational
25 remedies available under the IDEA.  Id. at 1276.  In contrast, the court in Robb required
26 exhaustion where the plaintiffs sought only money damages; moreover, in doing so, it relied
27 on Booth.  Robb, 308 F.3d at 1050.  The court also noted that where the IDEA's ability to
28

- 10 -

remedy a particular injury is unclear, "exhaustion should be required to give educational agencies an initial opportunity to ascertain and alleviate the alleged problem." Id.

The Court will grant Defendants' motion to dismiss Plaintiffs' § 1983 claims.

### 2. State Claims

When federal law claims are eliminated before trial, the court generally should decline jurisdiction over state law claims and dismiss them without prejudice. Gini v. Las Vegas Metro. Police Dept., 40 F.3d 1041, 1046 (9th Cir. 1994). Therefore, Court will also dismiss the remaining state law claims.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion to Dismiss (Doc. #19).

(2) Defendants' Motion to Dismiss (Doc. #19) is **granted**, Plaintiffs' claims are **dismissed without prejudice**, and the Clerk of Court must enter judgment accordingly.

DATED this 2nd day of March, 2009.

_____
Mary H. Murguia
United States District Judge